**WARRICK COUNTY COAL CORPORATION, et al.,**
Plaintiffs,

v.

**WARRICK COUNTY and Richard McKain, Paul Gore and Jerry L. Stuart, in their capacity of Warrick County Commissioners, Defendants.**

No. EV 89–65–C.

United States District Court,
S.D. Indiana,
Evansville Division.

Jan. 3, 1990.

Robert T. Bodkin, Bamberger Foreman Oswald & Hahn, Evansville, Ind., for plaintiffs.

David L. Jones, Jones and Wallace, Evansville, Ind., for defendants.

S. Anthony Long, Phillips and Long, Boonville, Ind., for defendants McKain, Gore and Stuart.

## MEMORANDUM

BROOKS, Chief Judge.

This matter comes before the Court upon the Petition for Preliminary Injunction filed by the plaintiff, Warrick County Coal Corporation. Warrick Minerals, Inc. subsequently intervened as a plaintiff. The plaintiffs are seeking to enjoin the defendant, Warrick County, from enforcing restrictions on coal truck traffic upon Yankeetown Road in Warrick County, Indiana.

The intervening plaintiff, Warrick Minerals, is the lessee under a real estate lease located in Warrick County, Indiana, near the intersection of Yankeetown Road and Kaiser Road. The purpose of the lease is to allow this plaintiff to mine coal on the property. Plaintiff, Warrick County Coal, is the contract miner for the site. Mark Bruce is president of both companies.

On December 14, 1988, the defendant, Warrick County, entered into an agreement with plaintiff which would allow Warrick County Coal to utilize Yankeetown Road to haul coal from its mine entrance south to Indiana State Highway 66. On February 27, 1989, at a regular session of the Warrick County Commissioners, the commissioners rescinded the agreement permitting Warrick County Coal to haul coal on Yankeetown Road. The Commissioners suggested that the plaintiff use a previously existing coal haulage road connecting the property with Indiana Highway 61. If this was not possible, the plaintiff should use Kaiser Road as the coal haul route, subject to upgrading to a standard for hauling coal. In May, 1989 Warrick County

adopted an ordinance that placed a weight limit of ten (10) tons on Yankeetown Road.

Yankeetown Road was formerly State Highway 61, having been constructed by the State of Indiana in approximately 1933, but has been for many years an asphalt surfaced county road. The portion of the road which is the subject of this action consists of approximately 2.6 miles, the distance from the mine entrance to Indiana State Highway 66. This portion of Yankeetown road travels through hilly terrain and has a number of curves with very limited site distances. The paved surface of the road ranges from seventeen feet six inches (17'6") wide to eighteen feet five inches (18'5") wide throughout this stretch of road. Yankeetown Road has no shoulders located on this section of the highway. Along the 2.6 miles of Yankeetown Road a total of sixty-four (64) families reside with driveways exiting onto the roadway. Several of the driveways are located on curves or steep grades with dangerously short site distances. The traffic count on this section of Yankeetown Road is approximately one thousand three hundred (1300) vehicles per day. This includes school buses which make thirty-six (36) individual stops twice a day between 6:30 to 8:15 a.m. and between 1:30 to 4:15 p.m. Coal truck traffic would take place approximately between 6:00 a.m. to 4:00 p.m. The school buses are nine feet three inches (9'3") wide from mirror to mirror. With Yankeetown Road in its present condition, school buses meeting coal trucks would have only approximately two inches (2") of room to spare between the vehicles. The speed limit on Yankeetown Road is posted at forty (40) miles per hour.

Kaiser Road is an approximately two mile long rock and gravel county road connecting Yankeetown Road and Indiana Highway 61 to the west. It is designated as a local access road. Kaiser Road is straight and level throughout its course. Kaiser Road is approximately twenty (20) to twenty-two (22) feet wide except at the railroad crossing which is approximately sixteen (16) to seventeen (17) feet wide. The railroad track crossing has no signals or controls. Kaiser, on its eastern termi-

nus, intersects Yankeetown Road approximately one thousand (1000) feet south of plaintiffs' mine entrance. Along the two (2) miles of Kaiser Road there reside a total of three (3) families with driveway entrances onto Kaiser Road. The traffic count on Kaiser Road is ninety-three (93) vehicles per day. Kaiser Road is served by two (2) school buses with only one stop each morning and afternoon. Because of its rock and gravel surface, Kaiser's use is dependent upon weather conditions. Kaiser Road suffers drainage problems because one side of the road has no ditch. Dust is also a problem in the summer months unless some type of dust control measures have been taken.

The plaintiffs allege that Warrick County breached a contract when they rescinded the agreement allowing plaintiffs to use Yankeetown Road. The defendants contend that the recision of the agreement concerning the use of Yankeetown Road was a permissible exercise of the police power of the county. Plaintiffs brought this preliminary injunction to enable them to haul coal on Yankeetown Road during the pendency of this suit.

Recently in *Ping v. National Education Association*, 870 F.2d 1369 (7th Cir.1989), the Seventh Circuit summarized the factors that a district court ought to consider in determining whether to grant a preliminary injunction:

Before a preliminary injunction will issue, the movant must show, as a threshold matter, that: (1) they have no adequate remedy at law; (2) they will suffer irreparable harm if the injunction is not granted; and (3) they have some likelihood of success on the merits in the sense that their "chances are better than negligible." *Roland Machinery Co. v. Dresser Industries, Inc.*, 749 F.2d 380, 386–87 (7th Cir.1984); *see also, Lawson Products, Inc. v. Avnet, Inc.*, 782 F.2d 1429, 1433 (7th Cir.1986). If the movant can meet this threshold burden, the inquiry then becomes a "sliding scale" analysis of the harm to the parties and the public from the grant or denial of the injunction and the actual likelihood of

success on the merits. In particular, and keeping in mind that the public interest may become important in a given case, the "more likely the plaintiff is to win, the less heavily need the balance of harms weigh in his favor (in order to get the injunction); the less likely he is to win, the more need it weigh in his favor." *Roland Machinery*, 749 F.2d at 387. *Id.*, at 1371–72.

The Complaint in this action is brought in two Counts. The first Count alleges that the conduct of the defendant is in violation of 42 U.S.C. 1983 and the Fourteenth Amendment to the Constitution. Plaintiff alleges that defendants' conduct denies equal protection of the law and due process of law in that defendants have failed to follow prescribed State law in imposing valid weight limits on the use of Yankeetown Road. Count II asserts that the defendants have breached a contract which is allegedly binding and enforceable between the parties.

The Court will first address the alleged breach of contract in Count II and determine whether plaintiffs have established a likelihood of success on the merits. On December 14, 1988, Mark Bruce, president of both plaintiffs, and the Commissioners of Warrick County signed an agreement which permitted the plaintiffs to use Yankeetown Road to haul coal from the mine. On February 27, 1989, at a regular session of the Warrick County Commissioners, the Commissioners voted to rescind the agreement permitting coal haulage on Yankeetown Road. Although no specific reason for the recision is given in the minutes of that meeting, it is apparent from the hearing and briefs filed by both parties, that the decision was based on public safety considerations.

In *New Orleans Gaslight Company v. Drainage Commission of New Orleans*, 197 U.S. 453, 25 S.Ct. 471, 49 L.Ed. 831 (1904), the United States Supreme Court held as follows:

> The constitutional prohibition upon state laws impairing the obligation of contracts does not restrict the power of the state to protect the public health, the public morals, or the public safety, as the one or the other may be involved in the execution of such contracts. Rights and privileges arising from contracts with a state are subject to regulations for the public health, the public morals, and the public safety, in the same sense and to the same extent as are all contracts and all property, whether owned by natural persons or corporations. 197 U.S. 460.

A similar holding is found in *Southern Indiana Gas & Electric Company v. Department of Highways, et al.*, 533 N.E.2d 1289 (Court of Appeals—First District 1989) where the Indiana Court of Appeals held at page 1292 as follows:

> The Court notes further that the exercise of police power in the interest of public health and safety cannot be contracted away and whatever rights the gas company obtained were subject to any proper regulations as might be required in the execution of such.

A recision of an agreement to haul coal on a county road for public safety reasons would seem to be a valid exercise of police power by the county. The likelihood of success on the merits of Count II of the plaintiffs' Complaint is very small. According to the sliding scale used for determining the granting of preliminary injunctions in the Seventh Circuit, the less likely the plaintiff is to win on the merits, the more heavily the balance of harms between the plaintiff and the public must weigh in favor of the plaintiff. The harms weighing in favor of the plaintiff if the injunction is denied is that Kaiser Road could be dangerous to the coal truck drivers in poor weather conditions. The plaintiffs also suffer economic harm because the Kaiser Road route is four (4) miles longer than the Yankeetown Road route. At haulage costs of thirty cents (30¢) per ton that would cost plaintiffs one dollar twenty cents ($1.20) more per ton for using Kaiser Road. The harms for the public if the injunction is granted lies in the possibility of an accident involving a coal truck on Yankeetown Road. Considering the amount of traffic, school bus stops and driveway entrances, the potential for harm occurring from coal

truck traffic on Yankeetown Road greatly outweighs the potential harm for coal truck traffic on Kaiser Road.

This Court finds that the evidence indicates that plaintiff has a minimal likelihood of success on the merits of Count II and that the balance of harms weighs greatly in favor of denying the preliminary injunction.

Count I alleges that defendants' conduct denies equal protection and due process of law in failing to follow prescribed State law in imposing valid weight limits. The ordinance was enacted under the authority of Indiana Code 9–4–1–125 which provides in relevant part as follows:

> (c) Local authorities with respect to highways under their jurisdiction, except highways in the state highway system and the state maintained routes thereof through cities and towns, may also by ordinance prohibit the operation of trucks or other commercial vehicles or may impose limitations as to the weight, size, or use thereof, on designated highways, which prohibitions and limitations shall be designated by appropriate signs placed on the highways. Suitable and convenient routes shall be provided for traffic so diverted and appropriately marked.

If, as this Court believes, the county can halt coal truck traffic on Yankeetown Road as a valid exercise of its police power then whether or not the county followed proper procedures in setting weight limits is immaterial. Although at the time the ordinance was passed, the Warrick County Commissioners may have felt a weight limit was necessary to prohibit coal haulage traffic, it was merely surplusage. For public safety reasons, the county can ban coal truck traffic on Yankeetown Road without the necessity of using weight limits or any other type of traffic control measures. Thus, on Count I, the plaintiff has failed to make a sufficient showing of some likelihood of success on the merits to enable this Court to grant a preliminary injunction.

The Court finds that Warrick County, in the interests of public safety, can prevent coal haulage on Yankeetown Road by exercising its police power. As the Court is duly advised of the premises, and having heard the evidence, it is hereby ordered that the plaintiffs' Petition for Preliminary Injunction be DENIED.

IT IS SO ORDERED.